[Cite as *State v. Lindsey*, 2019-Ohio-1550.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28025 |
| | : | |
| v. | : | Trial Court Case No. 2017-CR-1616 |
| | : | |
| WILLIAM CLIFTON MCKINNEY | : | |
| LINDSEY | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 26th day of April, 2019.

. . . . . . . . . .

MATHIAS H. HECK, JR., by MICHAEL P. ALLEN, Atty. Reg. No. 0095826, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

JAY A. ADAMS, Atty. Reg. No. 0072135, 36 North Detroit Street, Suite 102, Xenia, Ohio 45385
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

HALL, J.

{¶ 1} William Clifton McKinney Lindsey appeals from his conviction and sentence on one count of child endangering and one count of evidence tampering.[1]

{¶ 2} Lindsey advances two assignments of error. First, he contends the trial court erred in imposing maximum and consecutive prison sentences. Second, he alleges ineffective assistance of counsel based on his attorney allowing him to plead guilty.

{¶ 3} The charges against Lindsey stemmed from injuries sustained by his girlfriend's 23-month-old child while at home in Lindsey's care. The child suffered life-threatening burns over almost all of his body as a result of being scalded by hot water in a bathtub. When the child's mother returned home and saw the burns, she took him to an area hospital. The child later was airlifted to a hospital in Columbus, Ohio. The following day, two detectives interviewed Lindsey in a hospital conference room. He was advised of his *Miranda* rights, signed a waiver-of-rights form, and spoke to the detectives. After the interview, Lindsey left the conference room on his own without being arrested.

{¶ 4} Lindsey later was indicted on two counts of child endangering, one count of felonious assault, and one count of evidence tampering. Following an unsuccessful suppression motion, he pled guilty to all of the charges with no agreement as to sentencing. The trial court found that merger applied to both counts of child endangering and felonious assault, and the State elected to proceed to sentencing on one count of child endangering. The trial court imposed an eight-year prison sentence on that count. It

---

[1] Lindsey also pled guilty to a second count of child endangering and one count of felonious assault. At sentencing, the trial court merged these offenses into the second-degree-felony child endangering count referenced above as allied offenses of similar import.

also imposed a thirty-month prison sentence for evidence tampering. Finally, it ordered the two sentences to be served consecutively and made the findings necessary for consecutive sentences.

{¶ 5} In his first assignment of error, Lindsey contends the trial court "erred in imposing the maximum consecutive sentence." After reciting black-letter law governing sentencing, Lindsey's entire substantive argument is as follows:

> In the present case, it is submitted that the record in this matter does not support a maximum and consecutive sentence in this matter. The record is not sufficient to order such a sentence and the termination entry does not set forth sufficient basis for the aforementioned sentence being either maximum or consecutive. While it is acknowledged that there was not a maximum sentence imposed on the Tampering with Evidence count, it is submitted that this does not change the analysis in this matter.

> Given the foregoing, it is respectfully requested that this Court reverse the decision of the trial court and remand for resentencing.

(Appellant's brief at 8-9).

{¶ 6} Upon review, we find Lindsey's assignment of error to be unpersuasive. He fails to raise any particular sentencing error for us to address. He simply makes the assertion that the record does not support a maximum and consecutive sentence (while conceding that one of his two sentences was not a maximum sentence) without explanation of how or why that is so. In particular, he does not address the evidence in relation to any of the statutory seriousness or recidivism factors or the specific statutory findings required for consecutive sentences. Nevertheless, we have reviewed the record

ourselves and find no basis for reversing Lindsey's sentence.

{¶ 7} Under R.C. 2953.08(G)(2), we may vacate or modify a sentence only if we determine by clear and convincing evidence that the record does not support the sentence or that it is otherwise contrary to law. Here Lindsey does not dispute the lawfulness of his sentence. It is within the authorized statutory range, and the trial court considered the statutory principles and purposes of sentencing and the statutory seriousness and recidivism factors, thereby making the sentence "authorized by law." *See State v. Folk*, 2d Dist. Montgomery No. 27375, 2017-Ohio-8105, ¶ 5-7. Consequently, we may vacate or modify Lindsey's lawful sentence only if we find by clear and convincing evidence that the record does not support it.

{¶ 8} At sentencing, the trial court explained its decision as follows:

[The victim] was 23 months old at the time of his burn injuries. He suffered first and second degree burns over 80 percent to 90 percent of his body.

The Court has reviewed a letter from Detective Sergeant J.R. Myers from the Centerville police department in the matter. I find that letter to be very significant. I've also reviewed a letter from [M.A.] and a letter from Dr. Kevin Johnson, who was involved in [the victim's] care and treatment at the Dayton Children's Hospital. I'll return to Dr. Johnson's letter in a moment.

The Court has also reviewed photographs of [the victim's] extensive burn injuries. By all accounts, the burn injuries suffered by [the victim] were life threatening. In fact, he was Care Flighted from Children's Medical Center in Dayton to the Nationwide Children's Hospital Burn Center in

Columbus, Ohio. [The victim] spent 99 days in the hospital for care related to his burn injuries.

[The victim] has endured several surgeries and will require additional surgeries as he grows older to deal with the burn injuries and his skin condition. There will be additional skin grafting procedures that will be necessary for [the victim] as he grows older.

[The victim] was in extremely critical condition when he arrived at Nationwide Children's Hospital. Evidence of that is established by the fact that he, and I'm using the term found in the medical records, coded some seven times in the hospital. Coding meaning that he in essence was at a point where he was expressing a lack of vital sign[s], or coding in the sense of potentially dying at that point.

[The victim] now at his very young age has heart issues and he takes heart medication directly relating to his burn injuries. As a testament to the insidious nature of these injuries and the psychological impact that they've had on this victim, [the victim] now calls himself ugly because of the condition of his skin.

[The victim] was horribly exposed to scalding hot water in a bathtub. The pictures of his injuries which are profound shows something akin to a lobster who's been in a cooking pot.

Importantly, by his own admission to the police, Mr. Lindsey did not take [the victim] immediately to the hospital upon discovering the burn issues. Initially, Mr. Lindsey reported to the police that he had called 911 for

information regarding [the victim's] care and then he later said he called a nurse hotline. Both of these claims proved to be untrue.

The burn injuries were so profound that some parts of [the victim's] skin were found on the wall of the bathtub. The onesie that [the victim] was wearing before being placed in the bathtub was torn off his body, being ripped down the middle. The evidence is clear from the condition of that onesie that the snaps were not used to remove it from [the victim's] body.

I said I would return to Dr. Johnson. Dr. Johnson was a treating physician for [the victim], and I was struck by his comments that, and I'm quoting, "The majority of patients with burns of this extent do not survive," and again quoting, "Living after severe extensive burns means a life of pain, disfigurement, and disability." Dr. Johnson went on to say that, again quoting, "The burn was so deep and severe that all of his, [the victim's], pigment was gone."

Dr. Johnson indicated that while he still practices medicine, this case has caused him to, these are his words, never work in an ED, which means emergency department, again.

Dr. Jonathan Groner, the trauma medical director of the Center for Pediatric Trauma Research at Nationwide Children's Hospital, has indicated that in his experience of over 20 years in dealing with the burn injuries of minor children, this was one of the worst cases he has ever seen.

Ohio Revised Code Section 2929.12(B) and the seriousness and recidivism factors set forth therein speaks to the Court considering, number

one, the physical or mental injuries suffered by the victim of the offense being exacerbated because of the physical or mental condition or age, let me repeat that, or age, of the victim. The victim of the offense suffering serious physical and psychological harm as a result of the offense, that's number two, and number three, the offender's relationship with the victim facilitating the offense. All of these apply to make this case more serious from a sentencing perspective.

With this backdrop, the Court imposes the following sentences. On Count II, the offense of endangering children, a felony of the second degree, a sentence of eight years CRC.

On Count IV, the offense of tampering with evidence, a term of 30 months CRC to run consecutively with the sentence on Count II. I specifically find that consecutive sentences are necessary to punish Mr. Lindsey and consecutive sentences in this case are not disproportionate to the seriousness of his conduct and to the danger he poses to the public.

And at least two of the multiple offenses in this case were committed as part of one or more course of conduct and the harm caused by two or more of the multiple offenses was so great and unusual that no single prison term could adequately reflect the seriousness of Mr. Lindsey's conduct.

The total prison sentence that I am levying in this case against Mr. Lindsey is 10 years and six months CRC.

(Tr. 81-85).

**{¶ 9}** The trial court's termination entry noted that it had considered the appropriate

statutory sentencing factors. (Doc. # 198). The entry also included the statutory findings set forth above for the imposition of consecutive sentences. (*Id.*).

{¶ 10} In our view, the record fully supports the trial court's analysis and its sentencing decision. Lindsey nearly burned to death a 23-month-old child in his care, causing horrific pain and suffering and permanent physical and psychological injury. He failed to get medical care for the child and then lied to investigators, falsely claiming that he had called 911 and a nursing hotline. We see no basis on which to conclude that the record clearly and convincingly fails to support either of the individual sentences the trial court imposed.

{¶ 11} The record also fully supports the findings that consecutive sentences were necessary to punish Lindsey and that they were not disproportionate to the seriousness of his conduct and the danger he posed to the public. In addition, particularly absent any argument from Lindsey, we cannot say the record clearly and convincingly fails to support a finding that the two offenses for which he was sentenced—child endangering and evidence tampering—were committed as part of one course of conduct and the harm caused by these offenses was so great and unusual that no single prison term adequately could reflect the seriousness of his conduct. The course of conduct at issue involved scalding the child in the bathtub and, according to a bill of particulars, then removing or concealing items of evidentiary value, "including soiled crib bedding and/or mattress pad and/or a soiled and torn cotton bodysuit and/or a wet and/or soiled disposable diaper." (Doc. # 121).

{¶ 12} Having found no grounds for vacating or modifying Lindsey's sentence under R.C. 2953.08(G)(2), we overrule his first assignment of error.

{¶ 13} In his second assignment of error, Lindsey alleges ineffective assistance of counsel based on his attorney's allowing him to plead guilty. He claims counsel should have told him to plead no contest rather than guilty. He argues that counsel's failure to do so could not have been a strategic decision because he pled guilty as charged, without any sentencing concessions, thereby gaining nothing from the plea. Therefore, he argues that deficient performance by counsel has been established.

{¶ 14} With regard to prejudice, Lindsey contends the guilty plea prejudiced him because it precludes challenging the trial court's ruling on his suppression motion. Although Lindsey does not appear to dispute the trial court's finding that he was not "in custody" when detectives questioned him at the hospital, he suggests that suppression nevertheless may have been warranted because portions of a *Miranda* waiver form were not read to him, one or more promises were made to him, and he did not understand his rights. (Appellant's brief at 10). Lindsey claims the trial court failed to address these issues, which would have resulted in his suppression motion being sustained.

{¶ 15} Finally, Lindsey raises a second ineffective assistance of counsel claim, and alleges a due process violation, based on his attorney's telling him that "he did not have the right to testify in his own defense" at the suppression hearing. (*Id.* at 11).

{¶ 16} To establish a claim of ineffective assistance of counsel, a defendant must demonstrate both that trial counsel's conduct fell below an objective standard of reasonableness and that the errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial or proceeding would have been different. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989).

**{¶ 17}** Here the record does not reflect what counsel advised Lindsey about pleading guilty as opposed to no contest or whether counsel told him that pleading guilty would not preserve the suppression issue for appeal. Because the record on appeal does not show what counsel told Lindsey about these issues, he cannot demonstrate deficient performance. *See State v. McGlown*, 2d Dist. Montgomery No. 25434, 2013-Ohio-2762, ¶ 17. For all we know, Lindsey could have disregarded advice to plead no contest and elected to plead guilty, accept responsibility, and hope for sentencing leniency from the court. But even if we assume, arguendo, that counsel provided deficient representation by failing to advise Lindsey to plead no contest and failing to explain all ramifications of pleading guilty, we see no resulting prejudice, because the record fails to demonstrate any basis for challenging the trial court's suppression ruling.

**{¶ 18}** The suppression-hearing transcript supports the trial court's finding that Lindsey was not in custody when detectives interviewed him in a hospital conference room. (Doc. # 26 at 4). He came into the room voluntarily and left on his own without being arrested after a roughly hour-long interview. A door to the room was closed but not locked. (Tr. 13-29). At the outset of the interview, the detectives did read Lindsey his *Miranda* rights as a precaution. He indicated that he understood the rights and told the detectives that he had 12 years of schooling. (*Id.* at 20-21). A waiver-of-rights form was shown to Lindsey but not read to him. Lindsey signed the waiver form and proceeded with the interview. (*Id.* at 21, 34-35). Although he complains on appeal about the detectives not reading the waiver form to him, they had no obligation to do so during a non-custodial interview where *Miranda* did not even apply.[2]

---

[2] Parenthetically, we note that even where *Miranda* does apply, the critical issue is

{¶ 19} As for alleged "promises" being made to Lindsey, the only thing the detectives told him was that he would not be arrested that day no matter what he said. (*Id.* at 30). This was in fact true, and it was not the sort of "promise" that renders a suspect's statements involuntary or subject to suppression. The record also provides no support for Lindsey's suggestion that he did not understand his *Miranda* rights, which were not required to be explained to him anyway. Because we see absolutely no basis for suppressing Lindsey's statements to police during a non-custodial interview, we find no resulting prejudice even if counsel failed to tell him that a guilty plea would forfeit the suppression issue for appeal.

{¶ 20} Finally, we reject Lindsey's claim based on his attorney's telling him that he could not testify at the suppression hearing. After the State rested, defense counsel advised the trial court as follows: "Your Honor, my client has asked to testify. I told him he could not testify. I said it wasn't in his best interest to testify at this hearing. I don't know if I need to put that on the record. But he has acquiesced to my legal advice." (Tr. 40). Moments later, defense counsel addressed the issue again, stating: "* * * Mr. Lindsey had requested to testify during the course of this motion to suppress hearing. It was my advice to him that it was not necessary or prudent in terms of strategy at this time, and he has acquiesced to my legal advice." (*Id.* at 41).

{¶ 21} Read as a whole, counsel's explanation makes clear that he did not prohibit Lindsey from testifying. Rather, counsel advised Lindsey that it would be unwise and

---

whether a defendant is advised of his rights and indicates his understanding of them. If a defendant speaks freely after being advised of his rights and indicating his understanding of them, as occurred here, then a waiver may be inferred. *State v. Murphy*, 91 Ohio St.3d 516, 519, 747 N.E.2d 765 (2001).

unnecessary to testify. On the record before us, Lindsey cannot demonstrate that this advice fell below an objective standard of reasonableness because we have no way of knowing what he would have said if he had testified. For the same reason, he cannot establish any prejudice resulting from counsel's advice. Accordingly, we see no ineffective assistance of counsel. The second assignment of error is overruled.

{¶ 22} The judgment of the Montgomery County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and TUCKER, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Michael P. Allen
Jay A. Adams
Hon. Michael W. Krumholtz